USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/20/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                               :

UNITED STATES OF AMERICA           :

                         :

           -against-            :          22-CR-540 (VEC)

                         :

                         :      OPINION AND ORDER

JAMES GARLICK,              :

                 Defendant.    :

                         :
--------------------------------------------------------------------X

**VALERIE CAPRONI, United States District Judge:**

James Garlick is charged with one count of being a felon in possession of a firearm. *See* Indictment, Dkt. 5; 18 U.S.C. § 922(g). He has moved to dismiss the Indictment on the grounds that 18 U.S.C. § 922(g) is unconstitutional. *See* Not. of Mot. to Dismiss Indictment, Dkt. 22. He has also moved to suppress evidence the Government obtained pursuant to three search warrants. *See* Not. of Mot. to Suppress, Dkt. 24. For the following reasons, Defendant's motions are DENIED.

## BACKGROUND

Defendant was released from prison in May 2022 after serving an 11-year sentence for manslaughter in the first degree in violation of New York Penal Law § 125.20. Compl., Dkt. 1, ¶ 3.

According to the Complaint, at around 8:11 P.M. on August 27, 2022, Defendant was stopped by New York Police Department ("NYPD") officers at a motorcycle and electric scooter checkpoint for committing a traffic violation and for riding a scooter without a license plate. *Id.* ¶ 5. The stop was captured by a police officer's body camera. *Id.*; *see also* Body Camera

Footage, Dkt. 25-10.  Defendant told the officers that he owned the scooter, but he did not have proof of registration or insurance for it.  *Id.* ¶¶ 5.d–e.

Defendant told police officers that he "followed" the individual from whom he bought the scooter and that he had asked the person about the scooter's "specs."  Body Camera Footage at 03:33–03:37.  When Defendant was asked if he had a receipt, he responded that he "ha[d] it online" and "could try to find it."  *Id.* at 07:35–46.  When the officer asked again whether Defendant had a receipt, he responded, "I don't know, I'd have to find it."  *Id.* at 07:47–50.  When the officer asked if Defendant had ordered the scooter online, he responded, "Actually, I'm gonna keep it 100 percent with you.  I bought it from somebody.  You know what I'm saying?  I bought it from somebody, I was trying to make some money to support my family, that's what we doing, everybody's doing it.  You know what I'm saying?"  *Id.* at 07:52–08:03.  The officer then asked Defendant if he had bought the scooter from someone he knew.  *Id.* at 08:04–08.  Defendant answered, "No, he just came by one day and said 'I got a bike for $600.'"  *Id.* at 08:08–13.

After the officer told Defendant that the scooter would be impounded, *id.* at 08:10–09:10, Defendant unlocked the scooter's storage console and removed several items, including what appeared to be a charger and an extension cord, Compl. ¶ 5.g.[1]  Defendant then returned those items to the storage console, locked the storage console, and handed the key to an officer, who took the scooter to the side of the road for impound.  *Id.* ¶ 5.i.

---

[1]      Although there is body-camera footage of the stop, not all of the items Defendant removed are "clearly visible" in the footage.  Compl., Dkt. 1, ¶ 5.g.

In the early morning hours of the following day, NYPD officers performed an inventory search of the scooter's console where they found a .25 caliber Colt, Model 1908 pistol, among other items.  *Id.* ¶ 6.

Defendant was arrested on September 27, 2022, and he was subsequently indicted for being a felon in possession of a firearm (the "Offense").  *See* Arrest Warrant, Dkt. 2; Indictment. The Government applied for and secured at least three search warrants (the "Warrants") over the following few months.

The Warrants sought evidence from accounts thought to be associated with Defendant at (1) Google (the "Google Warrant"); (2) Apple iCloud (the "iCloud Warrant") and (3) Facebook (the "Facebook Warrant").

The Warrants and accompanying applications (the "Applications") are substantially similar.  In the applications to obtain the Warrants, Special Agent Thomas Ford ("Agent Ford") stated that there was probable cause to believe that Defendant's online accounts contained evidence, fruits, and instrumentalities of the Offense because:

- A gun was found in the locked console of a scooter Defendant admitted to owning, and additional evidence establishing the duration of Defendant's ownership of the scooter would be probative of whether he was aware of the contents of the scooter's console;

- Subpoena returns[2] from the food delivery application DoorDash show that Defendant began an application to be a DoorDash driver on June 9, 2022 using a Google email account (which is also tied to a Facebook account); [3]

- Based on his "training and experience,"[4] Agent Ford knows that DoorDash communicates with applicants by email and "requires detailed information about the vehicle an applicant intends to use to make deliveries[,]" evidence that would be probative of the duration of Defendant's ownership of the scooter and thus his knowledge of the contents of its console;

- Agent Ford learned from reviewing the body-camera footage of the stop that Defendant told the police that he bought the scooter from a "guy" and he would need to check "online" for a receipt for the scooter.  Agent Ford believed, based on his "training and experience," that meant that Defendant would need to check his email account or a file stored in a cloud-based storage system; for that reason, Agent Ford

---

[2]     The Government issued a subpoena to DoorDash based on Defendant's statement during the stop that he used the scooter to support his family.  *See* Ford Google Warrant Affidavit, Dkt. 25-1, ¶ 14.  DoorDash provided information regarding a DoorDash application associated with "James Darnell Garlick," and stated that the application was "never completed."  *See* DoorDash Email 1, Dkt. 25-7.  DoorDash also purportedly "stated on the phone" to Agent Ford that "[t]hey didn't get any photos or description of the bike."  *See* DoorDash Email 2, Dkt. 25-8.

[3]     The application for the iCloud Warrant did not discuss the DoorDash subpoena returns at all, *see generally* Ford iCloud Warrant Affidavit, Dkt. 25-3, and the application for the Facebook Warrant mentioned the DoorDash subpoena returns only in passing, *see* Ford Facebook Warrant Affidavit, Dkt. 25-5, at 10–11.

[4]     The Applications set forth Agent Ford's experience investigating narcotics distribution and trafficking, firearms offenses, and crimes of violence (including shootings) as well as his participation in electronic surveillance. *See* Ford Google Warrant Affidavit ¶ 1; Ford iCloud Warrant Affidavit ¶ 1; Ford Facebook Warrant Affidavit at 1–2.

asserted that there was probable cause to believe a receipt for the scooter may be found in Defendant's online accounts;[5]

- Based on Agent Ford's "training and experience," he knows that "felons, who cannot lawfully purchase firearms, will often rely on electronic communication" such as email or instant messages (i) to arrange for the purchase of firearms and (ii) to make arrangements for the actual transfer of the weapon. Agent Ford also relied on his training and experience to note that sellers of goods will frequently exchange photographs of the goods prior to a sale.[6] Agent Ford asserted there was probable cause to believe that evidence of such communications would be stored in Defendant's online accounts; and

- For all of those reasons,[7] Agent Ford opined that the targeted online accounts were likely to contain evidence concerning the ownership of a scooter or a firearm, Defendant's state of mind (including his desire to own a scooter or a firearm), Defendant's preparation for obtaining a firearm and possessing a firearm (including

---

[5]     The Facebook Warrant application did not discuss this evidence. Instead, Agent Ford stated as part of that application that, based on his review of the stop's body-camera footage, Defendant appears to have told police officers that he "followed" the individual from whom he bought the scooter and had asked that person about the scooter's "specs." Agent Ford opined, based on his "training and experience," that meant that Defendant was able to "keep tabs and potentially interact with the person through messaging" on Facebook. Ford Facebook Warrant Affidavit at 11.

[6]     The Facebook Warrant application did not discuss the exchange of photographs of goods prior to a sale.

[7]     The Google Warrant application uniquely stated, based on Agent Ford's "training and experience," that former felons often use the "dark web" to identify individuals selling guns. Ford Google Warrant Affidavit ¶ 18.

        The iCloud Warrant application uniquely stated that other information associated with Defendant's iCloud account, such as apps, instant messages, and Internet activity, may reveal services used in furtherance of the crimes under investigation, the identification of co-conspirators, and the identification of instrumentalities of the Offense. Ford iCloud Warrant Affidavit ¶ 10.

        The Facebook Warrant application uniquely stated, based on Agent Ford's "training and experience," that people often use social media such as Facebook to post photographs depicting themselves in social situations, and that felons who cannot lawfully purchase firearms "often turn to unauthorized sellers of firearms," who can be found and messaged on social media such as Facebook. Ford Facebook Warrant Affidavit at 11–12.

discussions of unlawful conduct), and other accounts and devices Defendant used in furtherance of the Offense.

*See* Ford Google Warrant Affidavit, Dkt. 25-1, ¶¶ 13–18, 20; Ford iCloud Warrant Affidavit, Dkt. 25-3, ¶¶ 20–26, 28; Ford Facebook Warrant Affidavit, Dkt. 25-5, at 10–13.

As is relevant to the motion to suppress: the Google Warrant required the production of the contents of Defendant's email account, as well as his Google Chrome browser and search history records, *see* Google Warrant, Dkt. 25-2, Attachment A at 1–2[8]; the iCloud Warrant required the production of the contents of all emails and instant messages associated with the account, *see* iCloud Warrant, Dkt. 25-4, Attachment A at 2[9]; and  the Facebook Warrant required the production of all communications sent or received by the account; all user content created, uploaded, or shared by the account; all photographs and images in the user gallery; and all records of searches performed using the account, *see* Facebook Warrant, Dkt. 25-6, Attachment A at 2–3.[10]

The Warrants authorized law enforcement personnel to review all responsive records to locate any evidence, fruits, and instrumentalities of the Offense.[11]  *See* Google Warrant,

---

[8]    The Google Warrant also required the production of, *inter alia*, information about the device that accessed the account; information regarding any linked accounts; transactional records; customer correspondence; and preserved or backup records.  *See* Google Warrant, Dkt. 25-2, Attachment A at 1–3.

[9]    The iCloud Warrant also required the production of, *inter alia*, the contents of all files and other records stored on iCloud; activity, connection, and transactional logs; and location data.  *See* iCloud Warrant, Dkt. 25-4, Attachment A at 2–3.

[10]    The Facebook Warrant also required the production of, *inter alia*, all data and information associated with the account's profile pages; all data and information deleted by the account's user; a list of all people the user follows on Facebook and a list of all people who follow the user; all location data associated with the account; and all preserved records.  *See* Facebook Warrant, Dkt. 25-6, Attachment A at 1–3.

[11]    Such evidence was defined to include evidence concerning the ownership of scooters or firearms, Defendant's preparation for the Offense, the Offense itself (including discussions of unlawful conduct), and other accounts and devices used in furtherance of the Offense.  *See* Google Warrant, Attachment A at 3–4; iCloud Warrant, Attachment A at 4; Facebook Warrant, Attachment A at 4.  The Google Warrant and the iCloud Warrant also defined evidence of the Offense as including evidence concerning Defendant's state of mind as it relates to the Offense (including the desire to own scooters or firearms).  *See* Google Warrant, Attachment A at 3; iCloud

Attachment A at 3; iCloud Warrant, Attachment A at 4; Facebook Warrant, Attachment A at 3.
Agent Ford stated that law enforcement personnel would "use various methods to locate
evidence, fruits, and instrumentalities" of the Offense within the materials produced by the
online account provider, including "undertaking a cursory inspection" of all emails or messages
within Defendant's account and "keyword searches[,]" though keyword searches and similar
methods "are typically inadequate to detect all information subject to seizure."  Ford Google
Warrant Affidavit ¶ 22; Ford iCloud Warrant Affidavit ¶ 30; Ford Facebook Warrant Affidavit at
13–14.

Three separate magistrate judges approved Agent Ford's Warrant applications.  *See*
Google Warrant at 2; iCloud Warrant at 2; Facebook Warrant at 2.

Google produced approximately 7,000 pages of records in response to the Google
Warrant.  *See* Def. Supplemental Mem. in Supp. of Suppression Mot., Dkt. 39, at 1.  The
Government marked 156 pages of records responsive, including Defendant's entire Internet
search history from around the time of his release from prison until his arrest.  *See* Gov't
Supplemental Mem. in Opp. to Suppression Mot., Dkt. 46, at 9; Ex. A, Dkt. 39-1.[12]

Apple produced approximately 600 "records," or 5.17 gigabytes of data, in response to
the iCloud Warrant.  *See* Def. Supplemental Mem. in Supp. of Suppression Mot. at 1; Gov't
Supplemental Mem. in Opp. to Suppression Mot.at 4.  The Government marked 1131 pages, or
about six megabytes of data, responsive, including (1) the entirety (about a month's worth) of
text messages between Defendant and a romantic partner identified as Dirty Valdez ("Valdez");

---

Warrant, Attachment A at 4.  The iCloud Warrant uniquely defined evidence of the Offense as including records of
financial transactions related to the Offense.  iCloud Warrant, Attachment A at 4.

[12]     Defendant moved to file under seal data the Government marked responsive to the Warrants, *see* Exs. A–C,
Dkt. 39-1, Def. Letter Mot., Dkt. 41.

(2) the entirety (about a month's worth) of Defendant's text messages with Reo DA DON

("Reo"), whom the Government suspects provided Defendant with a firearm; (3) excerpts of a

text message conversation between Defendant and another romantic partner identified as

Monica; (4) excerpts of a text message conversation between Defendant and his parole officer;

and (5) a screenshot of Defendant's call history, which includes a missed call from Reo.  *See id.*

at 4–5; Ex. B, Dkt. 39-1.

Facebook produced approximately 2,000 pages of records in response to the Facebook

Warrant.  *See* Def. Supplemental Mem. in Supp. of Suppression Mot. at 1.  The Government

marked 26 pages of records responsive, including (1) searches to buy a scooter; (2) copies of a

photograph of Defendant's scooter; and (3) the entirety of Defendant's messages with Reo.  *See*

Gov't Supplemental Mem. in Opp. to Suppression Mot. at 3; Ex. C, Dkt. 39-1.

## DISCUSSION

Defendant filed two pretrial motions: one to dismiss the Indictment on the grounds that

Section 922(g) is unconstitutional, and one to suppress any evidence the Government obtained

through the Warrants.  The Court addresses each in turn.

### I.      18 U.S.C. § 922(g) Is Constitutional

Relying on *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022),

Defendant argues that Section 922(g), the federal statute that prohibits felons from possessing a

firearm in interstate commerce, violates the Second Amendment to the U.S. Constitution.  Def.

Mem. in Supp. of Mot. to Dismiss Indictment, Dkt. 23, at 1–2.  The Government argues that

*Bruen* did not disturb Second Circuit precedent upholding the constitutionality of Section 922(g).

Gov't Mem. in Opp. to Mot. to Dismiss Indictment, Dkt. 26, at 1–2.  The Court agrees with the Government that Section 922(g) is constitutional.

### A. Legal Standard

The Supreme Court held in *Bruen* that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  142 S. Ct. at 2126.  To justify the regulation of conduct involving guns, the Government must demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation."  *Id.* According to the Court, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment."  *Id.* at 2131.  Moreover, if "earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional."  *Id.*

Although the Supreme Court's majority opinion in *Bruen* did not directly address whether that decision would have any impact on felon-in-possession laws, it repeatedly characterized the Supreme Court's Second Amendment jurisprudence as providing "law-abiding" citizens with the right to possess handguns.  *See id.* at 2122, 2131, 2133–34, 2138, 2150, 2156.  Moreover, the majority stressed that *Bruen* is "consistent" with two relatively recent Supreme Court cases regarding the Second Amendment, *id.* at 2122 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010)), both of which made clear that the Court, although radically altering the landscape vis-à-vis Second Amendment jurisprudence generally, did not see those opinions as disturbing "longstanding"

prohibitions on the possession of firearms by felons, *see Heller*, 554 U.S. at 626–27; *McDonald*, 561 U.S. at 786.

Following *Heller* and *McDonald*, the Second Circuit held that Section 922(g) is constitutional. *See United States v. Bogle*, 717 F.3d 281, 281–82 (2d Cir. 2013) (joining "every other circuit to consider the issue" in affirming Section 922(g)'s constitutionality given "longstanding prohibitions on the possession of firearms by felons") (quoting *Heller*, 554 U.S. at 626 and citing *McDonald*, 561 U.S. at 786); *see also United States v. Jimenez*, 895 F.3d 228, 233 (2d Cir. 2018) (citing *Bogle* as precedent "uphold[ing] the federal ban on ex-felons' access to firearms and ammunition").

### B.  Application

*Bruen* does not alter the holding of *Bogle*: Section 922(g) is a constitutional regulation of the possession of firearms.  There is nothing in *Bruen* that suggests the Court saw that explication of the reach of the Second Amendment as disturbing the Supreme Court's dicta that "longstanding prohibitions on the possession of firearms by felons" remain constitutional.  Six Justices emphasized that very point.  *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (noting that *Bruen* does not "disturb[] anything" the Supreme Court said in *Heller* and *McDonald* regarding "restrictions that may be imposed on the possession or carrying of guns"); *id.* at 2162 (Kavanaugh, J., and Roberts, C.J., concurring) (same); *id.* at 2189 (Breyer, J., Sotomayor, JJ., and Kagan, JJ., dissenting) (same).

Because there is nothing in *Bruen* that alters the rationale of *Bogle*, Defendant's motion to dismiss the Indictment is DENIED.  *See United States v. King*, No. 21-CR-2555 (NSR), 2022 WL 5240928, at *4–5 (S.D.N.Y. Oct. 6, 2022) (denying a defendant's motion to dismiss a

Section 922(g) indictment because his argument that *Bruen* casts doubt on "longstanding prohibitions on the possession of firearms by felons" was "meritless").

## II.     Defendant's Motion To Suppress Is Denied

Defendant asserts that the Applications did not establish probable cause to believe that his Google, iCloud, and Facebook accounts would contain evidence of a crime; that Agent Ford's affidavits included material omissions and misrepresentations designed to mislead; that the Warrants were overbroad and lacked sufficient particularity; and that the searches exceeded the permissible scope of the Warrants.  *See generally* Def. Mem. in Supp. of Suppression Mot., Dkt. 25; Def. Supplemental Mem. in Supp. of Suppression Mot.  The Court finds that probable cause, although somewhat thin relative to believe evidence of the acquisition of a firearm would be found in Defendant's online accounts, was adequate to support the Warrants.  Accordingly, the motion to suppress is denied.

### A.  There Was Probable Cause to Believe Evidence of Criminality Would be Found in Defendant's Online Accounts

#### 1.  Legal Standard

"The Fourth Amendment to the Constitution provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"  *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting U.S. Const. amend. IV).  Probable cause exists if the information in the warrant's supporting affidavit supplies "a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 718 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

When reviewing a magistrate judge's probable cause determination, courts "accord substantial deference to the magistrate's finding" and limit their review "to whether the issuing

judicial officer had a substantial basis for the finding of probable cause." *United States v. Singh*,
390 F.3d 168, 181 (2d Cir. 2004) (quoting *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir.
1993)); *see also United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (noting that a
magistrate judge's "finding of probable cause is itself a substantial factor tending to uphold the
validity of [the] warrant") (citations omitted).

### 2. Application

Defendant asserts that there was not probable cause to believe that his online accounts
would contain evidence of the Offense.  He argues that Agent Ford improperly relied on
conclusory assertions regarding his training and experience rather than case-specific evidence
and that the nexus between the Offense and any case-specific evidence Agent Ford did cite was
too tenuous to establish probable cause to search the accounts.  *See* Def. Mem. in Supp. of
Suppression Mot. at 19–27.  The Government maintains that the Warrants were supported by
probable cause because Agent Ford did not rely solely on his training and experience, cited case-
specific evidence supporting a fair probability that evidence of Defendant's scooter ownership
(and knowledge of its contents) and acquisition of a firearm would be found in his online
accounts, and because probable cause is a holistic, context-specific inquiry.  Gov't Mem. in Opp.
to Suppression Mot., Dkt. 27, at 10–15.

The Court agrees with the Government; Agent Ford's Applications adequately
demonstrated probable cause to believe there would be evidence of Defendant's acquisition of a
scooter and a firearm in his online accounts, although the basis for the probable cause as to
information specifically related to the acquisition of a firearm is thin.  Given the "substantial
deference" owed to magistrate findings, the Court concludes that probable cause existed to

search for evidence regarding acquisition and possession of both a scooter and a firearm.  *Singh*,

390 F.3d at 181.

Defendant's statements to law enforcement regarding the location of the scooter's receipt

and about his communications with the scooter's seller reasonably suggested that he had online

accounts and used them to look for and obtain merchandise, and that there would be evidence in

those accounts of when and under what circumstances Defendant acquired the scooter.  That

information, in turn, bears on the likelihood that Defendant was aware of the contents of the

scooter's console.  *See United States v. DiTomasso*, 932 F.3d 58, 66 (2d Cir. 2019) (noting that

the probable cause determination "requires only a practical, common-sense decision as to that

probability" given "all the circumstances" set forth in the supporting affidavit) (internal

quotation marks and citation omitted).  Agent Ford properly invoked his training and experience

investigating felons to supplement his account of the facts establishing probable cause to search

Defendant's online accounts for evidence of Defendant's scooter acquisition.  *See United States

v. Ukhuebor*, No. 20-MJ-1155 (LDH), 2021 WL 1062535, at *3 (E.D.N.Y. Mar. 19, 2021)

(concluding that "when viewed together with the other evidence in the [a]ffidavit," a government

agent's expert opinion "strengthen[ed]" the magistrate judge's finding of probable cause); *United

States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) (noting that affidavits in

support of a search warrant for a device or an online account "can rely on the affiant['s] training,

experience, and the totality of the circumstances to support a 'common-sense' probability that

the evidence may be found [in a device or account] sufficient for probable cause").

The connection between the facts alleged and the probable cause conclusion are

somewhat thinner relative to the gun.  Nevertheless, Agent Ford established, as noted above, that

Defendant used his online accounts to search for and purchase things.  That, together with his

observation that Defendant could not lawfully purchase a firearm (*i.e.*, Defendant could not purchase a gun from a regular gun merchant) and his "training and experience" that felons will frequently rely on electronic communications to make arrangements for the unlawful purchase of a firearm, adequately establishes probable cause to believe there would be evidence of Defendant's acquisition of a firearm in his online accounts.  If there were no independent evidence that Defendant used his online accounts to make purchases, Agent Ford's knowledge based on his training and experience that felons frequently purchase weapons through online means would have likely been inadequate to establish probable cause, but these applications provided just enough case-specific evidence to nudge his training and experience across the line from sheer speculation to probable cause.  *See United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (noting that an agent's expert opinion "standing alone, might not be sufficient to establish a link" between a suspect's residence and criminal activity); *United States v. Guzman*, No. 97-CR-786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) ("Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.") (internal quotation marks and citation omitted).

Because the applications adequately established probable cause for the Warrants, Defendant's motion to suppress due to lack of probable cause is denied.[13]

---

[13]     Even if the Applications had not adequately established probable cause to search Defendant's online accounts for evidence of his acquisition of a firearm, the good faith exception would foreclose suppression.  If an officer "genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, and thus [no future violation] to deter" by excluding the evidence.  *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *United States v. Leon*, 468 U.S. 897, 920–21 (1984)) (internal quotation marks omitted).  To be entitled to rely on the "good faith exception," the officer's reliance on the warrant must be objectively reasonable.  *Id.* (quoting *Leon*, 468 U.S. at 922).  The fact that three separate magistrate judges independently concluded that the Applications established probable cause "is the clearest indication that [the Government] acted . . . in objective good faith."  *United States v. Levy*, No. 11-CR-

### B.  Agent Ford's Purported Omissions and Misrepresentation Are Immaterial

#### 1.  Legal Standard

A defendant may challenge a search warrant when the supporting affidavit contains deliberately or recklessly false or misleading information.  *Canfield*, 212 F.3d at 717 (citing *Franks v. Delaware*, 438 U.S. 154, 164–72 (1978)).  But "[e]very statement in a warrant affidavit does not have to be true."  *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997) (citing *Franks*, 438 U.S. at 165).  "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding."  *Canfield*, 212 F.3d at 717–18 (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted).

Inaccuracies or omissions are intentional if they involve a "deliberate falsehood" or were made with "reckless disregard for the truth."  *Id.*  The mere "intent to exclude information" is insufficient, as an affiant "cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."  *United States v. Awadallah*, 349 F.3d 42, 67–68 (2d Cir. 2003) (quoting *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990)).

To assess whether alleged misstatements were material to the probable cause determination, a reviewing court must set aside the falsehoods in the supporting affidavit and examine whether the untainted remainder establishes probable cause.  *United States v.*

---

62 (PAC), 2013 WL 664712, at *11 (S.D.N.Y. Feb. 25, 2013) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).

*Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (citing *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005); *United States v. Nanni*, 59 F.3d 1425, 1433 (2d Cir. 1995)).  The reviewing court should also supplement the affidavit with any facts known at the time that were omitted from the affidavit. *Id.* (citing *United States v. Ippolito*, 774 F.2d 1482, 1487 n.1 (9th Cir. 1985)).

If the corrected warrant application establishes probable cause, "then the misstatements are not 'material' and suppression is not required." *Id.*; *see also Canfield*, 212 F.3d at 718 ("The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause.") (citing *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)) (internal quotation marks omitted).  A court reviews this "corrected" affidavit *de novo*. *Canfield*, 212 F.3d at 718.

A defendant is entitled to a hearing to determine whether a warrant affidavit "must be voided and the fruits of the search excluded" if the "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56.  In other words, even if a defendant makes a substantial preliminary showing of a deliberate or reckless omission, the defendant is not entitled to a *Franks* hearing if the false statement or omission was not "necessary to the [issuing] judge's probable cause finding." *Canfield*, 212 F.3d at 718 (citation omitted).

## 2.  Application

Defendant asserts that Agent Ford's affidavits contained material omissions and representations because he disclosed neither that Defendant failed to complete his DoorDash application nor that DoorDash indicated it never received photos or a description of Defendant's

scooter, and because he did not disclose Defendant's full exchange with police officers regarding

the receipt for the scooter or how he bought the scooter.  Def. Mem. in Supp. of Suppression

Mot. at 27–32.  The Government asserts that Agent Ford's "imprecision" regarding the

DoorDash application was inadvertent, that a more fulsome account of Defendant's exchange

with law enforcement was attached to the Applications, and that none of Agent Ford's purported

misrepresentations or omissions is material to probable cause.  Gov't Mem. in Opp. to

Suppression Mot. at 15–21.

 The Court finds that the complained-of omissions and misrepresentations from Agent

Ford's affidavits are not material or necessary to the probable cause analysis, and therefore do

not warrant either a *Franks* hearing or suppression.  The fact that Defendant failed to complete

his DoorDash application does not decrease the likelihood that emails existed regarding the

scooter.  Although Defendant's purported failure to submit a description or photo of the vehicle

to DoorDash minimizes the likelihood of relevant emails sent to DoorDash, Agent Ford's other

evidence regarding Defendant's online activity vis-à-vis his acquisition of the scooter was

sufficient to make the same point: that evidence regarding Defendant's acquisition and

ownership of the scooter was likely available in his online accounts.  As for Defendant's

assertion that someone came to his apartment to sell the scooter, that statement does not

contradict his other statements suggesting that there were online communications with the seller

of the scooter, and, in any event, that statement from Defendant was provided to the magistrate

judges who issued the Warrants because the Complaint was attached to the Applications.

 Agent Ford had no obligation to disclose all of the facts gleaned from his investigation at

the time he applied for the Warrants, *see Awadallah*, 349 F.3d at 67–68, and he expressly stated

that the Applications did not include everything he had learned about the case at that point, *see*

Ford Google Warrant Affidavit ¶ 3; Ford iCloud Warrant Affidavit ¶ 5; Ford Facebook Warrant

Affidavit at 2–3.

     For all of those reasons, Defendant's request for a *Franks* hearing is denied; the

complained of omissions or misrepresentations were not material because they did not affect the

probable cause determinations.

### C.  The Warrants Are Not Overbroad and Do Not Lack Particularity

#### 1.  Legal Standard

     A warrant is overbroad if "its description of the objects to be seized . . . is broader than

can be justified by the probable cause upon which the warrant is based." *United States v.*

*Lustyik*, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (quoting *United States v. Galpin*, 720 F.3d

436, 446 (2d Cir. 2013)) (internal quotation marks omitted).  A warrant is sufficiently particular

if it identifies the specific offenses for which probable cause has been established, the place to be

searched, and the items to be seized in relation to the designated crimes.  *United States v.*

*Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (quoting *Galpin*, 720 F.3d at 445–46).  Because of the

"serious risk that every warrant for electronic information will become, in effect, a general

warrant," courts must exercise "heightened sensitivity" to potential violations of the particularity

requirement in the context of digital searches.  *Galpin*, 720 F.3d at 447.

#### 2.  Application

     Defendant argues that the Warrants were overbroad and lacked sufficient particularity

because they gave the Government unbridled discretion to search Defendant's online accounts;

did not meaningfully describe the evidence sought; improperly targeted Defendant's state of

mind; were not sufficiently limited temporally; sought information about which Agent Ford

offered no case-specific facts; and authorized the limitless search and seizure of Defendant's

online accounts instead of tailoring searches to the case.  Def. Mem. in Supp. of Suppression

Mot. at 34–42.  In response, the Government asserts that the Warrants limited the items that

could be seized to evidence of the Offense; adequately described the places to be searched; listed

specific categories of information constituting evidence, fruits, and instrumentalities of the

Offense, including information relevant to Defendant's *mens rea*; were reasonably tailored

temporally; and properly allowed the Government to conduct a cursory review of all of the

Warrant returns.  Gov't Mem. in Opp. to Suppression Mot. at 21–36.

The Warrants are not overbroad because they properly limited the scope of the

Government's searches to evidence, fruits, and instrumentalities of the Offense.  The Warrants

set forth the Government's basis for probable cause to believe that Defendant committed the

Offense and for probable cause to believe Defendant's online accounts contained evidence of the

Offense.  *See United States v. Tontisabo*, No. 21-CR-701 (LAK), 2023 WL 411622, at *3 & n.19

(S.D.N.Y. Jan. 25, 2023) (concluding that a Snapchat warrant was not overbroad because the

warrant "ma[de] it clear" that the government sought only evidence "of the subject offenses,

intending to seize only information that was evidence of the crime," a search "of a type routinely

upheld by courts in this district") (collecting cases); *United States v. Ray*, 541 F. Supp. 3d 355,

398–99 (S.D.N.Y. 2021) (concluding that warrants for email and iCloud accounts were not

overbroad because they "identified the [s]ubject [o]ffenses and provided probable cause for each

of them").

The time periods specified in the Warrants do not render them overbroad or insufficiently

particularized; although each covers a slightly different time period, collectively they span only a

few months beginning around the time  Defendant was released from prison and ending shortly

after his arrest.[14]  There is "no apparent consensus" in this District as to when a time limit of any

kind is even required to meet the breadth and particularity requirements.  *Pinto-Thomaz*, 352 F.

Supp. 3d at 306 (quoting *United States v. Zemlyanksky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y.

2013)); *see also United States v. Hernandez*, No. 09-CR-625 (HB), 2010 WL 26544, at *9

(S.D.N.Y. Jan. 6, 2010) ("The Second Circuit has yet to consider the effect the lack of a time

frame has on a search warrant's breadth or its particularity, and district courts within this circuit

are split on the issue . . . .").  While there could be circumstances under which it would be

reasonable and appropriate not to set date parameters in a search warrant for an online account,

those circumstances are very likely the exception and not the rule.  In this case, the time periods

specified in the Warrants sufficiently target periods during which the accounts were likely to

contain evidence of the Offense, thus avoiding an unfettered search of all of Defendant's online

activities.[15]

Courts in this Circuit have repeatedly recognized that a magistrate judge is not required to

specify "search terms" that the Government must use when reviewing electronic information

---

[14]    The Google Warrant covered the period from May 25, 2022 (approximately the date Defendant was
released from prison) to November 23, 2022 (approximately two months after Defendant's arrest); the iCloud
Warrant generally covered the period from May 25, 2022 to September 27, 2022 (the day Defendant was arrested);
and the Facebook Warrant covered the period from June 4, 2022 to September 2, 2022 (about a week after the
scooter was impounded).  *See* Google Warrant, Attachment A at 1; iCloud Warrant, Attachment A at 2; Facebook
Warrant, Attachment A at 1.  Although certain items in the iCloud Warrant are not subject to time limitations, *see*
iCloud Warrant Attachment A at 1–3, those items are not material to the Court's decision because they target
information that reasonably cannot be temporally limited (such as information regarding the iCloud accountholder's
identity or information necessary to decrypt encrypted data) and because Defendant is not challenging the seizure of
any data that falls outside the period between May 25, 2022 and September 27, 2022.

[15]    Defendant maintains that the Warrants' time limitations are not "meaningful" because they extend up to
one month beyond when Defendant's scooter was seized, and because they capture Defendant's Facebook activity
from the time he established the account in June 2022.  Def. Mem. in Supp. of Suppression Mot., Dkt. 25, at 34–35.

It was reasonable to believe that Defendant may have exchanged messages regarding the seizure of the
scooter that would provide relevant information about the length of ownership and shed light on the likelihood that
he was aware of the contents of the scooter's console.  The fact that the Facebook Warrant essentially covered the
entire period that account was active is of no moment; Defendant allegedly committed the Offense very shortly after
he was released from prison, generally limiting the time period during which he could have committed a crime.

produced pursuant to a search warrant in order to satisfy the particularity requirement.  It is

"often impossible to identify in advance the words or phrases that will separate relevant files or

documents before the search takes place," and officers "cannot readily anticipate how a suspect

will store information related to the charged crimes."  *United States v. Ulbricht*, 858 F.3d 71, 102

(2d Cir. 2017); *see also United States v. Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at

*22 (S.D.N.Y. Dec. 21, 2022) (noting that a warrant "need not require the use of search terms or

prescribe a search methodology"); *United States v. Graziano*, 558 F. Supp. 2d 304, 315

(E.D.N.Y. 2008) (noting that a defendant's argument that a warrant was overbroad and invalid

"because it did not require a certain search methodology or limit the search of computers to

certain keywords or terms" was "unpersuasive").  The Magistrate Judges' decisions not to

specify that search terms must be used to locate responsive material, therefore, does not render

the Warrants overbroad or insufficiently particular.

Courts in this District have also routinely sanctioned the Government's ability to obtain

from the provider "an entire" online account and then to search that data for communications

"within the limited categories contained in the warrant."  *In the Matter of a Warrant for all*

*Content & Other Info. Associated with the Email Account xxxxx@gmail.com Maintained at a*

*Premises Controlled by Google, Inc.*, 33 F. Supp. 3d 386, 394 (S.D.N.Y. 2014) (collecting

cases); *see also Ray*, 541 F. Supp. 3d at 399–400 (concluding that email and iCloud search

warrants allowing for a "cursory inspection of all" the defendant's communications were

"modelled on the warrants routinely approved in this Circuit"); *United States v. Chalavoutis*, No.

18-CR-0349 (JS) (AKT), 2019 WL 6467722, at *5 (E.D.N.Y. Dec. 2, 2019) (concluding that a

warrant allowing "a broad search" of the defendant's email accounts for a period of six years

satisfied the particularity requirement); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL

9450598, at *27 (E.D.N.Y. Dec. 21, 2015) (dismissing as "meritless" a defendant's argument that a warrant allowing seizure of his "full [Facebook] account" was improper).  The Magistrate Judges approved this recognized procedure in Defendant's case; the Warrants permitted the Government to obtain Defendant's entire accounts from Google, iCloud and Facebook and to search those records for evidence concerning the ownership of scooters or firearms, Defendant's state of mind (including the desire to own scooters or firearms),[16] Defendant's preparation for the Offense, the Offense itself (including discussions of unlawful conduct), and other accounts and devices Defendant used in furtherance of the Offense.  The Warrants, therefore, properly circumscribed the Government's searches.[17]

For all of those reasons, Defendant's motion to suppress because the Warrants are overbroad and lack specificity is denied.

### D.  The Government Did Not Execute the Warrants in Flagrant Disregard of Their Terms

#### 1.  Legal Standard

A search "must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (citation omitted).  If the Government exceeds a warrant's authority in the scope of its search, "the normal remedy is suppression and return of those items, not invalidation of the entire search."  *Id.*  The "drastic remedy" of

---

[16]    The Government's search for evidence regarding Defendant's state of mind was not improper because such evidence is relevant to whether Defendant "knowingly" possessed a firearm.

[17]    The Court does not consider the Government's three "inadvertent" references to Instagram in the Facebook Warrant consequential because the Facebook Warrant is expressly limited to content associated with Defendant's Facebook account.  *See* Gov't Mem. in Opp. to Suppression Mot., Dkt. 27, at 32 n.11.

wholesale suppression "is not justified unless those executing the warrant acted in flagrant disregard of the warrant's terms." *Id.*

Executing agents are deemed to have acted in "flagrant disregard" of a warrant if "(1) they effect a widespread seizure of items that were not within the scope of the warrant" and "(2) do not act in good faith." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation marks and citations omitted).  A "widespread seizure of items" outside of a warrant's scope occurs when the search "resemble[s] a general search." *United States v. Ganias*, 755 F.3d 125, 136 (2d Cir. 2014), *rev'd on reh'g en banc on other grounds*, 824 F.3d 199 (2d Cir. 2016).  Executing agents act in good faith "when they perform searches in objectively reasonable reliance on binding appellate precedent." *Id.* (internal quotation marks and citation omitted); *see also Shi Yan Liu*, 239 F.3d at 141 n.3.

## 2.  Application

Defendant argues that the Government acted in flagrant disregard of the Warrants' terms because the Government marked wide-ranging Internet searches, personal and irrelevant text messages, and irrelevant Facebook comments and messages responsive even though these materials have no connection to the Offense.  *See* Def. Supplemental Mem. in Supp. of Suppression Mot. at 2–7.  In response, the Government argues that it: reasonably targeted for seizure the categories of evidence set forth in the Warrants; reasonably marked the entirety of Defendant's search history responsive so the parties can determine whether Defendant intentionally deleted his search history following seizure of the scooter; and reasonably marked a

broader set of Defendant's text message exchanges with certain individuals responsive to capture necessary context.  *See* Gov't Supplemental Mem. in Opp. to Suppression Mot. at 3–10.

The Government did not act in flagrant disregard of the Google Warrant's terms because it only marked as responsive Defendant's search history for the four-month period when he was out of prison; that period was appropriate to inform its suspicion that Defendant deleted his search history shortly after his scooter was seized.  As a general matter, the Government marked only 156 pages, or about 2 percent, of the records produced in response to the Google Warrant responsive, suggesting that it did not engage in the type of general search that would require wholesale suppression.  *See United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 62 (D. Conn. 2022) (concluding that the Government did not flagrantly disregard a search warrant's terms in part because it seized "only a comparatively small amount" of the defendant's data); *United States v. Mendlowitz*, No. 17-CR-248 (VSB), 2019 WL 1017533, at *13 (S.D.N.Y. Mar. 2, 2019) (concluding that the Government did not flagrantly disregard a search warrant's terms in part because it identified "a modest collection" of 1,830 responsive documents).  Moreover, the Google Warrant authorized the Government to seize evidence relevant to Defendant's "state of mind," including (but not limited to) his desire to own scooters or firearms.  *See* Google Warrant, Attachment A at 3.  The evidence seized from the returns from Google was not clearly beyond the scope of the Google Warrant because evidence that Defendant deleted his search history shortly after his encounter with law enforcement would bear on the extent to which he sought to hide his online activity from law enforcement because of a guilty state of mind.[18]  The

---

[18]    Defendant argues that the Government's execution of the Google Warrant was particularly unreasonable because it seized Defendant's "entire" Google search history.  *See* Def. Sur-reply in Supp. of Suppression Mot., Dkt. 47, at 2.  Defendant had only been out of prison for four months, however, at the time the warrant was obtained.  The entirety of his Google search history was, therefore, inherently limited.

Defendant also asserts that there are "too many alternative, more plausible explanations" for the gap in Defendant's search history.  Def. Sur-reply in Supp. of Suppression Mot. at 1–2.  Although more innocuous

drastic remedy of wholesale suppression is, therefore, not warranted. *Cf. United States v. Debbi*, 244 F. Supp. 2d 235, 237–39 (S.D.N.Y. 2003) (ordering an evidentiary hearing to determine whether the Government acted in bad faith; evidence suggested the Government had made no effort to separate evidence of the defendant's offense from other documents, had only returned improperly seized materials "after repeated demands from defense counsel," and had ignored the Court's advice that it return unresponsive documents from the evidence it had seized).

The Government did not act in flagrant disregard of the iCloud Warrant because it reasonably marked as responsive text message communications that put into context Defendant's assertions regarding the Offense and that captured his interactions with a suspected co-conspirator. The Court notes again that the Government marked only 0.12 percent of the records produced in response to the iCloud Warrant responsive, suggesting that wholesale suppression would be inappropriate and that the Government made a concerted effort to separate the wheat from the chaff. *See Triumph Capital Grp.,* 211 F.R.D. at 62; *Mendlowitz,* 2019 WL 1017533, at *13.

At or around the time of the seizure of the scooter, Defendant appears to have communicated with Valdez and Monica regarding the scooter, a firearm, and his state of mind. *See* Gov't Supplemental Mem. in Opp. to Suppression Mot. at 5–9. It was, therefore, reasonable for the Government to mark as responsive conversations surrounding those statements to provide context for the relationship and to confirm the identity of the person using the telephone.[19] *See*

---

explanations for the gap are conceivable, both Defendant and the Government would benefit from a more comprehensive search history record to litigate the merits of whether gaps in the search history are incriminating or innocuous.

[19]    The fact that the Government marked about 1,000 pages of text messages between Defendant and Valdez responsive does not, standing alone, change the Court's analysis. The exchange spans less than a month, from shortly before the scooter was seized until shortly before Defendant was arrested, and provides a necessary snapshot of Defendant's relationship with Valdez to inform their exchanges regarding the Offense.

*United States v. Nejad*, 436 F. Supp. 3d 707, 735–36 (S.D.N.Y. 2020) (considering "the entirety of the universe of documents deemed responsive in determining whether the responsiveness review was conducted reasonably" and concluding that the possibility that "some much smaller number" of the documents returned to the Government "may be irrelevant" was not sufficient to establish that the Government's responsiveness review was unreasonable); *United States v. Lumiere*, No. 16-CR-483 (JSR), 2016 WL 7188149, at *6 n.9 (S.D.N.Y. Nov. 29, 2016) ("[T]he Government's review need only be reasonable, not perfect, and law enforcement is given significant latitude in determining how to execute a warrant.") (citation omitted); *United States v. Dupree*, 781 F. Supp. 2d 115, 156–57 (E.D.N.Y. 2011) (concluding that seized documents were "not properly characterized as irrelevant to the instant charges or clearly outside the scope of the warrant").[20]

For similar reasons, the Government did not act in flagrant disregard of the terms of the Facebook Warrant.  The Government marked as responsive only 26 pages or 1.3 percent of the material produced by Facebook, including Defendant's communications related to buying a scooter, photographs of his scooter, and messages with Reo.  *See Triumph Capital Grp.*, 211 F.R.D. at 62; *Mendlowitz*, 2019 WL 1017533, at *13.  A few stray comments that are at least arguably encompassed by the Warrants do not undermine the reasonableness of the Government's search or its good faith.  *See United States v. Messalas*, No. 17-CR-399 (RRM), 2020 WL 4003604, at *8 (E.D.N.Y. July 14, 2020) (concluding that even if "more than 40%" of documents seized by the Government contained "nothing responsive" to the warrant, suppression

---

[20]    The Government marked as responsive 25 pages of text messages between Defendant and Reo, a single page of texts between Defendant and his parole officer, and a single list of incoming and outgoing calls, including a call from Reo.  The decisions to seize those communications were all reasonable as all were well within the scope of the iCloud Warrant.  At a minimum, communications with the parole officer confirm who was using the telephone at that time and are somewhat probative of Defendant's state of mind.  The communications and attempted communications with Reo are within the scope of the warrant and were reasonable to seize given other evidence that shows it was Reo who helped Defendant obtain a gun.

would not be warranted "so long as a majority of the documents seized were within the warrant's scope and the search was otherwise executed in a reasonable fashion"); *United States v. Lin*, No. 15-CR-601 (DLI), 2018 WL 3416524 , at *7 (E.D.N.Y. July 11, 2018) (concluding that because the Government seized emails "reasonably believed to relate to" the subject offense, it did not flagrantly disregard the warrant's terms).

For all of those reasons, Defendant's motion for to suppress is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss the Indictment and to suppress are DENIED.

Because Defendant did not propose narrowly tailored redactions to the data marked responsive to the Warrants, Defendant's motion to file this data under seal is DENIED.  *See United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).  Not later than **Monday, March 27, 2023**, Defendant must file an unsealed version of the data marked responsive to the Warrants on the docket or propose any narrowly tailored redactions in compliance with the Undersigned's local rules.

The Clerk of Court is respectfully directed to close the open motions at Docket Entries 22, 24, and 41.

**SO ORDERED.**

Date:  **March 20, 2023**
       **New York, NY**

_____
       **VALERIE CAPRONI**
       **United States District Judge**